**UNITED STATES DISTRICT COURT**
**OF COLORADO**

| | | |
|---|---|---|
| **PATRICIA SAVIN and JOSEPH SAVIN,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **CASE No: ______________** |
| **DAVOL, INC., and C.R. BARD, INC.,** | ) | **JURY TRIAL DEMANDED** |
| **Defendants.** | ) | |

## COMPLAINT

### Parties

1. Plaintiff, PATRICIA SAVIN ("Mrs. SAVIN") is a citizen and resident of the County of Weld, State of Colorado.

2. Plaintiff, JOSEPH SAVIN, is a citizen and resident of the County of Weld, State of Colorado. At all times relevant hereto, Plaintiff is and was the lawful spouse of PATRICIASAVIN.

3. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy. DAVOL at all times relevant did substantial and continuous business in the State of Colorado.

4. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and

participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Colorado.

**Jurisdiction**

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) because the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and because this is an action by an individual Plaintiff who is a citizen of a different state from the Defendant.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendants are located in this District, manufactured and advertised the subject Kugel Composix Hernia Patches in this District, received substantial compensation and profits from sales of Kugel Composix Hernia Patches in this District, and/or made material omissions and misrepresentations and breached warranties in this District.

**Facts**

7. Defendant DAVOL designed, manufactured and distributed the Composix Kugel Patch, a hernia mesh patch that was inserted into Mrs. SAVIN's body.

8. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Composix Kugel Patch that was inserted into Mrs. SAVIN's body.

9. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the

Composix Kugel Patch was authorized by the FDA as a Class II medical device.

10. Immediately after the Kugel Patches were placed on the market, DAVOL and BARD began receiving actual notices of memory ring failures and Kugel Patch defects. DAVOL and BARD actively and intentionally concealed this notice of the defective and dangerous condition associated with the Kugel Patches from Mrs. SAVIN, Plaintiff's physicians, and the general public.

11. After the defective and dangerous Kugel Patch was already placed on the market, Defendants DAVOL and BARD conducted physician screenings and reviews as early as 2002. An Establishment Inspection Report ("EIR") conducted by the FDA in 2006 found that the post market survey validation process of the device was incomplete and failed to include all the data from the physicians surveyed during this time. Whether intentionally or negligently, BARD and DAVOL failed to properly conduct and monitor their own post market design validation physician surveys including those which demonstrated unfavorable or "dissatisfied" results. These complaints and concerns of the physician surveyors were actively concealed by DAVOL and BARD from Mrs. SAVIN, Plaintiff's surgeons, and the public at large.

12. On March 25, 2004, Mrs. SAVIN had an incisional hernia repaired at the Longmont United Hospital in Longmont, Colorado. A Composix Kugel Patch was implanted into Mrs. SAVIN by Dr. Denise M. Miller at this time.

13. The Composix Kugel Patch hernia repair product implanted in Mrs. SAVIN was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

14. No later than September 2004, Defendants uncovered serious problems with the weld

process involving the memory recoil ring. Despite attempts to correct the problem at the plant, BARD and DAVOL found the corrective measures to be ineffective and the process still not in control. DAVOL and BARD were ware these weld issues had existed from the time the Kugel Patches were originally placed on the market and all current lots suffered from this dangerous defect. This information was intentionally withheld at this time from Mrs. SAVIN, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring.

15. During the 2006 EIR, corporate executives informed the FDA that the spring and summer period of 2005 showed a marketed increase in the number of complaints with the Kugel Patch and the memory recoil ring. In spite of their knowledge of increasing complaints and complications, DAVOL and BARD waited until August 30, 2005 to initiate a partial Kugel Patch distribution hold. DAVOL and BARD actively and intentionally chose not to immediately inform Mrs. SAVIN, Plaintiff's physicians, the FDA, and all other individuals who had been implanted or would be implanted with Kugel Patches using the memory recoil ring. DAVOL and BARD waited until December 2005 to notify the public of the potential severity of the complications which were resulting from the dangerous and defective Kugel Patches and have since admitted that the product quality hold and release procedure was not applied on a timely basis.

16. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to the health of the patients implanted with the devices.

17. On December 22, 2005, DAVOL recalled many sizes of Composix Kugel Patches under a Class I recall notice.

18. The Composix Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

19. The FDA conducted the aforementioned EIR investigations in January and February of 2006. The results of these investigations determined, among other things, that BARD and DAVOL:

i. had excluded ring failure events which should have been included from their complication database, reports, and recall notices;
ii. misidentified numerous Kugel Patch complication events;
iii. failed to apply the product quality hold and release procedure on a timely basis;
iv. failed to properly follow the procedures for conducting design validation review;
v. failed to identify all the actions necessary to correct and prevent the recurrence of further ring break and Kugel Patch complications; specifically, they provided no justification for including only the Extra Large Kugel Patch sizes in the December 2005 recall;
vi. failed to provide full information which they knew regarding numerous Kugel Patch complaints;
vii. failed to actually perform strength testing on memory recoil rings for all sizes of Kugel patch before putting them into the stream of commerce;
viii. failed to maintain appropriate sources for quality data to identify, track, and trend existing and potential causes for the ring failures and Kugel Patch complaints resulting in numerous inconsistencies and errors in the raw data and from the actual complaints and what was placed in the electronic databases.

20. On March 24, 2006, the initial Class I recall on the Composix Kugel Patch was expanded to include several more sizes of the patch and numerous additional lots of the defective hernia mesh product.

21. On January 10, 2007, the existing recall on the Composix Kugel Patch was again expanded to encompass further production lots of the defective hernia mesh product.

22. Plaintiff was never informed by Defendants of the defective, dangerous, and recalled

nature of the Kugel Patch and memory recoil ring which had been implanted until well after discovering of Bard's and Davol's FDA recall of the product.

23. Neither Mrs. SAVIN nor Plaintiff's physicians were aware of the defective and dangerous condition of the Kugel Patch or that this unreasonably defective condition was the cause of Mrs. SAVIN's injuries until some time after BARD and DAVOL chose to finally inform the general public of the defective nature of the Kugel Patches and the subsequent recalls.

24. Two years after the defective Kugel Patch was implanted, Mrs. SAVIN began suffering abdominal pain for which she sought treatment from her physician. Mrs. SAVIN was diagnosed with a fascial defect located right above the edge of the Kugel Patch. Dr. Miller scheduled surgery for May 4, 2006 to repair a recurrent incisional hernia.

25. During the surgery, an assistant was needed because of the amount of scar tissue in the area and the adherent bowel making visualization and dissection very difficult. Dr. Miller noted "On the inferior side, the mesh was very thick, like it had rolled back on itself". Unaware of the defective nature of the Composix Kugel Patch and its memory recoil ring, Mrs. SAVIN's physician was unable to diagnose the cause of her suffering and incorrectly attributed it to a recurrent incisional hernia. Dr. Miller repaired the recurrent incisional hernia by placing a piece of Marlex mesh on top of the Kugel Patch.

26. Over the next few months, Mrs. SAVIN began to experience abdominal pain for which she again sought treatment from her physician. Her physician attributed the pain to standard hernia repair recovery and infection although the culture showed no sign of growth which would indicate infection. On December 7, 2006, after continuing to experience abdominal pain, Dr. Miller took Mrs. SAVIN to the operating room of Longmont United Hospital for the removal of infected

mesh. During the surgery, Dr. Miller noted “No bacteria grew on a culture and three Gram stains were taken during surgery of various areas of fluid around the mesh today and no organisms were seen on Gram stain, but the mesh was a hard ball close to the intersection of the two wounds and had substantially contracted”. Dr. Miller encountered the bowel attached to the Kugel patch and went on to dissect away the bowel and tissue to which the patch had become adhered.

27. The defective Kugel Mesh was removed at this time because of its failure and after several days of hospitalization, Mrs. SAVIN was discharged to her home to continue her recovery.

28. Mrs. SAVIN has suffered and will continue to suffer physical pain and mental anguish.

29. Plaintiffs have incurred substantial medical bills and Mrs. SAVIN has lost wages.

30. DAVOL and BARD withdrew a large number of Composix Kugel Patches as a result of the high complication and failure rate of the product.

31. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

32. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Composix Kugel Patch before it was recalled.

33. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Composix Kugel Patch.

34. Upon information and belief, the complications and failures associated with the Composix Kugel Patches and Kugel Patches are not limited to the Composix Kugel Patch sizes which DAVOL and BARD has already recalled.

35. Upon information and belief, DAVOL and BARD were aware of the defect in

manufacture and design of the non-recalled Kugel Composix Patch sizes and the Kugel Patches and chose not to issue a recall on all Kugel Patches in the face of the high degree of complication and failure rates.

**COUNT I**
**Negligence**

36. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

37. Defendants DAVOL and BARD were negligent to Plaintiffs in the following respects:

38. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect , package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Composix Kugel Patch.

39. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Composix Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were unreasonably likely to injure the Composix Kugel Patch's users.

40. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Composix Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

41. DAVOL and BARD were aware of the probable consequences of the Composix

Kugel Patch. DAVOL and BARD knew or should have known the Composix Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Composix Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Mrs. SAVIN.

42. Defendants DAVOL and BARD owed a duty to Mrs. SAVIN to adequately warn her and her treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Composix Kugel Patch and the resulting harm and risk it would cause patients.

43. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Composix Kugel Patch.

44. As a direct and proximate result of the duties breached, the Composix Kugel Patch used in Mrs. SAVIN's hernia repair surgery failed, resulting in Mrs. SAVIN suffering pain and harm.

45. As a direct and proximate result of DAVOL's and BARD's negligence, Mrs. SAVIN has suffered injuries and damages.

46. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**<u>COUNT II</u>**
**Violation of the Colorado Deceptive Trade Practices Act**

47. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

48. Defendants DAVOL and BARD engaged in unfair and deceptive trading practices with Plaintiffs in the following respects:

49. Defendants DAVOL and BARD are merchants, who study, test, design, develop, manufacture, inspect, produce, market, promote, advertise, distribute and/or sell the Composix Kugel Patch for hernia repair surgery.

50. Defendants DAVOL and BARD knowingly committed unfair and deceptive practices in their study, test, design, development, manufacture, inspection, production marketing, promotion, advertising, distribution and/or sale of the Composix Kugel Patch for hernia repair surgery.

51. Defendants DAVOL and BARD knowingly committed unfair and deceptive practices when they failed to safely design and construct an effective Composix Kugel Patch for hernia repair surgery.

52. While Defendants DAVOL and BARD knew or reasonably should have known that some Composix Kugel Patches were at risk while they were engaged in the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and or selling of the Composix Kugel Patch for hernia repair surgery, specifically that

the "memory recoil ring" upon being subjected to stress after placement in the intra-abdominal space posed a significant risk of breakage, separation, migration, tearing and splitting that posed the danger of severe harm and death to patients.

53. DAVOL and BARD did not inform the FDA prior to December 2005 of their knowledge concerning the dangers posed to patients of its Composix Kugel Patches which were susceptible to failure and subject to the Class I recall.

54. DAVOL and BARD did not inform the public at large, or Plaintiff and Plaintiff's physicians, prior to December 2005 of its knowledge concerning the dangers posed to patients of their Composix Kugel Patches which were susceptible to failure and subject to the Class I recall.

55. DAVOL and BARD failed to give adequate warnings regarding the use and potential problems with such patches used for hernia repair.

56. DAVOL's and BARD's actions occurred while they were engaged in trade and commerce, and all of the conduct occurred during the course of their business.

57. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge that they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**<u>COUNT III</u>**
**Strict Product Liability**

58. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

59. Defendants DAVOL and BARD are strictly liable to Plaintiffs in the following respects:

60. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery.

61. The Composix Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. Mrs. SAVIN's Composix Kugel Patch was a Class I recalled device that failed while in her body causing her to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of her Composix Kugel Patch.

62. At all times mentioned, the Composix Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

63. The Composix Kugel Patch implanted into Mrs. SAVIN was being used in a manner reasonably anticipated at the time it was implanted in her by her surgeon.

64. The Composix Kugel Patches, like the one found in Mrs. SAVIN, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mrs. SAVIN as follows:

i. The Composix Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Composix Kugel Patch as designed and manufactured was unsafe to Mrs. SAVIN;

iii. The Composix Kugel Patch as designed and manufactured was unreasonably

dangerous to Mrs. SAVIN;

iv. The Composix Kugel Patch did not perform safely as an ordinary consumer/patient, like Mrs. SAVIN, would expect;

v. The Composix Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Composix Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Composix Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Composix Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Composix Kugel Patches for hernia repair surgery as will be learned during discovery.

65. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT IV
## Negligent Infliction of Emotional Distress

66. Plaintiffs re-allege and incorporate by reference each and every allegation contained

in preceding paragraphs as though fully set forth herein.

67. Defendants DAVOL and BARD are liable to Plaintiffs for the negligent infliction of emotional distress in the following respect:

68. Plaintiffs suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Composix Kugel Patch for hernia repair surgery.

69. Plaintiffs suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery.

70. Therefore, DAVOL and BARD are liable to Plaintiffs.

71. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT V
## Intentional Infliction of Emotional Distress

72. Plaintiffs re-allege and incorporate by reference each and every allegation contained

in preceding paragraphs as though fully set forth herein.

73. Defendants DAVOL and BARD are liable to Plaintiffs for the intentional infliction of emotional distress in the following respect:

74. Plaintiffs suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Composix Kugel Patch for hernia repair surgery.

75. Plaintiffs suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Composix Kugel Patch for hernia repair surgery, in complete and reckless disregard of safety to Mrs. SAVIN.

76. Therefore, DAVOL and BARD are liable to Plaintiffs.

77. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Composix Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VI
## Breach of Implied Warranty

78. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

79. Defendants DAVOL and BARD are liable to Plaintiffs for their breach of implied warranty in the following respect:

80. DAVOL and BARD sold the Kugel Patch which was implanted in Mrs. SAVIN. DAVOL and BARD impliedly warranted to Mrs. SAVIN, her physicians and health care providers, that the Composix Kugel Patch was of merchantable quality and safe for the use for which they were intended.

81. DAVOL and BARD knew or should have known that the Composix Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

82. Mrs. SAVIN, her physicians and health care providers reasonably relied on DAVOL's and BARD's judgment, indications and statements that the Composix Kugel Patch was fit for such use.

83. When the Composix Kugel Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

84. Mrs. SAVIN suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

**Wherefore**, Plaintiffs respectfully request judgment in their favor and against DAVOL and

BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

**COUNT VII**
**Failure to Warn**

85. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

86. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

87. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Mrs. SAVIN received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Composix Kugel Patch.

88. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of the Composix Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

89. The dangerous and defective conditions in the Composix Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Mrs. SAVIN had her hernia repair surgery the Composix Kugel Patch was in the same condition as when manufactured,

distributed and sold.

90. Mrs. SAVIN did not know at the time of use of the Composix Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

91. Mrs. SAVIN suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

92. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Composix Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore**, Plaintiffs respectfully request judgment in their favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

## COUNT VIII
## Fraud

93. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

94. In the course of business, DAVOL and BARD designed, manufactured and sold the Composix Kugel Patch for hernia repair surgeries.

95. At the time of the design, manufacture and sale of the Composix Kugel Patch, and more specifically at the time Mrs. SAVIN received the Composix Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further the Composix Kugel Patches were not accompanied by proper warnings regarding significant adverse

consequences associated with the Composix Kugel Patch.

96. BARD and DAVOL was aware of the dangerous and defective condition of the products and intentionally withheld this information from Mrs. SAVIN, Plaintiff's physicians, and the general public even though these significant dangers were not readily obvious to the ordinary user of the products, even after a post surgical complication had arisen.

97. BARD and DAVOL fraudulently presented to Plaintiffs, Mrs. SAVIN's physicians, and the general public that the Kugel Patch was a safe and effective product while they were fully aware that the dangerous and defective nature of the Kugel could and would cause injuries such as those suffered by Plaintiff.

98. Plaintiffs and Mrs. SAVIN's physicians relied upon the fraudulent misrepresentations and concealments of Defendants and allowed for the defective Kugel Patch to be implanted.

99. As a direct and proximate result of Plaintiffs' reliance on BARD's and DAVOL's fraudulent misrepresentations and concealments, Mrs. SAVIN was seriously and permanently injured.

100. The conduct of BARD and DAVOL in continuing to fraudulently market, promote, sell and distribute the Composix Kugel Patch while fraudulently concealing knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore**, Plaintiffs respectfully request judgment in their favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

<u>**COUNT IX**</u>
**Misrepresentation by Omission**

101. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

102. Defendants misrepresented the mechanical soundness and reliability of the Kugel Composix Hernia Patches to the general public through promotional and marketing campaigns. Defendants continued this misrepresentation for an extended period of time, without disclosing material information regarding the defective, hazardous, and harmful complications relating to the Kugel Composix Hernia Patches.

103. Defendants took advantage of the limited ability Plaintiffs had to discover Defendants' strategic and intentional concealment of the defects in their Kugel Composix Hernia Patches.

104. Defendants concealed these design and/or manufacturing defects from the public by withholding information pertaining to the inherent design and/or manufacturing defects and high risks of failure relating to the Kugel Composix Hernia Patches, and presenting the devices as sound and reliable.

105. Defendants' intentional misrepresentations and omissions were made willfully, wantonly or recklessly to Plaintiffs, the public at large, and Plaintiff's surgeons to induce the purchase of Defendants' Kugel Composix Hernia Patch over other hernia mesh repair systems on the market.

106. Defendants knew or should have known of the high risk the Plaintiffs would encounter by unwittingly agreeing to have implanted one of Defendants' defectively designed and/or manufactured Kugel Composix Hernia Patches.

**Wherefore**, Plaintiffs request a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT X**
**Loss of Consortium**

107. Plaintiffs re-allege and incorporate by reference each and every allegation contained in preceding paragraphs as though fully set forth herein.

108. As a direct and proximate result of the Defendants' said negligence and conduct as detailed above and herein, Plaintiff, JOSEPH SAVIN was caused to lose the consortium and society of the Plaintiff's spouse, Mrs. SAVIN

**Wherefore**, Plaintiffs respectfully request judgment in their favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for their costs.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL COUNTS**.

Plaintiffs, PATRICIA SAVIN and
JOSEPH SAVIN
By their Attorneys,

_/s Michael David McDivitt ________
Michael McDivitt, Esq.
Michael David McDivitt, Esq.
MCDIVITT LAW FIRM, P.C.
19 East Cimarron
Colorado Springs, CO 80903
719-471-3700

Ernest Cory
Jon C. Conlin
Stephen R. Hunt, Jr.
CORY WATSON CROWDER & DEGARIS
2131 Magnolia Avenue
Birmingham, Alabama 35209
205-328-2200
205-326-7896

Dated: